UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHANNON CORINTI, and ALLISON
SANTO individually, and on behalf of
all others similarly situated,

    Plaintiff,                                             CASE NO.: 4:20-cv-00173-MW-MAF

v.

ASSET PLUS CORPORATION,

    Defendant.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Plaintiffs, by and through undersigned counsel, hereby respond to Defendant Asset Plus Corporation's Motion to Dismiss (Doc. 19) and respectfully request this Honorable Court deny such and in support thereof assert the following:

**I.    INTRODUCTION**

It is well established that "[w]hen reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff." *Bilotta v. Citizens Info. Assocs., LLC*, No. 8:13-CV-2811-T-30TGW, 2014 WL 12620851, at *1 (M.D. Fla. Jan. 10, 2014). However, Defendant gives little deference to these standards in its motion to dismiss, largely basing the arguments in its motion on the false, argumentative, and frankly

absurd notion that the Plaintiffs' claims "are based on Plaintiffs' discontent with Asset Plus's refusal to force tenants out from the properties it manages." (Doc. 24, pp. 1-2).  The Plaintiffs, in fact, have pleaded exactly the opposite, asserting that tenants have been forced[1] from the facility by dangerous conditions and that "so many Class members contacted Defendant that it engaged in mass communications with Class members to present its position that no rescission would be permitted." (Doc. 19, pp. 13-14).  Similarly, Asset Plus repeatedly argues its facilities were "available" to its tenants, an allegation that flies directly in the face of the Plaintiff's pleaded assertions that these facilities were too dangerous to use.  To put it simply, Asset Plus's largely fact-based arguments may be appropriate for a closing argument at trial but have nothing to do with the consideration of a motion to dismiss.

Furthermore, Asset Plus's motion to dismiss is also incorrect in that it asserts that the complaint is entirely based upon the cancellation of physical attendance at university classes.  While this is an important consideration, as Plaintiffs pleaded in paragraph 60 of the Complaint,

> Indeed, it is noteworthy that very similar dorm facilities run by the universities were closed down and the students urged to leave because the living arrangements were unsafe to occupy. This was consistent with CDC guidelines which discouraged gatherings of more than 10 people and advised that stringent "social distancing"

---

[1]   Indeed, contrary to the notion that the Plaintiffs are trying to force students out of their residences involuntarily, any particular student not interested in the relief sought herein could simply elect not to participate in the class.

2

> measures be taken to avoid transmission of COVID-19. However, Defendant, because of its own selfish pecuniary interests, refused to acknowledge that the particular form of high-density housing arrangement that it provided was inconsistent with prudent safety measures.

(Doc. 19, p. 12). The facilities in question here involved shared bedrooms and shared bathrooms in addition to extensive shared common areas. (Doc. 19, ¶¶ 58 & 59). The risk of COVID-19 infection simply could not be mitigated under this set of conditions without extensive depopulation of the facility. However, because of its selfish pecuniary interests, Asset Plus has maintained that facilities that were unsafe were nonetheless "available" to its tenants and continues to demand full payment for services it cannot safely provide. Correcting that injustice is the very reason for this lawsuit.

## II. ARGUMENT

### A. Asset Plus's Request for Dismissal Claiming It Is Not A Proper Party Under the Lease Agreement Should Be Denied.

Plaintiffs' first sentence in the Amended Complaint states, "Defendant Asset Plus Corporation owns and operates private dormitories at colleges and universities throughout Florida, including the Southgate where Plaintiffs Shannon Corinti and Allison Santos leased units." (Doc. 19, ¶ 1) This in and of itself is enough to defeat Asset Plus's attempt to dismiss on improper party grounds.

As a threshold matter, this improper party argument is very questionable in that it is being raised for the first time in Asset Plus's second motion to dismiss.

Indeed, in its first motion to dismiss, Asset Plus insisted quite the opposite, namely that "[t]he parties entered into a lease agreement," the Plaintiffs made payment to Asset Plus, and Asset Plus "continued performance" under the contract. (Doc. 10, p. 1-2). Importantly, there was also no mention whatsoever of the "Leon County Educational Facilities Authority" in Asset Plus's initial disclosures.

Turning to the applicable legal standards, Asset Plus has itself acknowledged that "the allegations against Asset Plus must be taken as true for the purpose of consideration of this Motion to Dismiss." (Doc. 24, p. 2, fn. 1) That acknowledgment itself could also be dispositive enough to avoid dismissal at this stage of the case. Contrary to Defendant's assertion "there are no other factual allegations that demonstrate any relationship between Asset Plus and Plaintiffs" (Doc. 24, p.5) the Amended Complaint states that Plaintiffs are the guarantors and co-signers of the "Southgate Campus Centre" lease. (Doc. 19, ¶¶ 5-6). The Complaint further alleges that Asset Plus "is the manager of 122 apartment complexes and it operates at least 11 locations in Florida" including Southgate, which is "managed by the Defendant." (Doc. 19, ¶¶ 7,11)  *See also de Jesus Hernandez v. Four Seasons Hotels Ltd.*, No. 05-22360-CIV, 2005 WL 8155880, at *1 (S.D. Fla. Dec. 2, 2005) (denying a "wrong party" motion to dismiss because it would involve matters outside of the complaint).

However, perhaps just as importantly, Asset Plus also makes arguments that are wildly at odds with its assertions that it is not the contracting party, arguing for example that

> [t]he purpose of the contract was not to ensure that universities stay open, therefore, guaranteeing that Plaintiffs' decision to enter the agreement is financially logical, but rather to provide housing to the student that chose to go to school in the Tallahassee area. **Asset Plus has kept its end of the bargain** and continues to provide housing to students that chose to attend school in that area.

(Doc. 24, p. 6, n. 2). Here, not only does Asset Plus contend that it "has kept its end of the bargain" by "continu[ing] to provide housing to students," an explicit acknowledgement that it was a party[2] to the contract, it has also inexplicably been able to provide a copy of contracts concerning transactions that it supposedly had no part in, even claiming to fully understand the purpose of the agreements. Asset Plus has offered no explanation in its dismissal motion concerning the exact nature of its obvious involvement in these matters, and, rather bizarrely, even contends that "Asset Plus continues to perform" under the agreement it is supposedly not a party to (Doc. 24, p. 6).

---

[2]  There are other discrepancies worth mentioning as well. The allegation in paragraph 11 of the Amended Complaint that Southgate is a "student-only **private** dormitory" was taken directly from the front page of the Southgate website, www.southgateattallahassee.com. (Doc. 19., p. 3, emphasis added). Yet Asset Plus now suggests that the real party in interest is an apparently governmental entity named the "Leon County Educational Facilities Authority."

Not only is Defendant's argument at odds with its own assertions, as demonstrated by Exhibit A to Plaintiffs' Amended Complaint, it was an e-mail from Defendant (southgatecampuscentre@**assetliving**.com) which informed students they would not be released from their lease agreement and "[w]e remain committed and are **contractually obligated to provide housing for our residents**" (Doc. 19-1) (emphasis added).

Given the discrepancies mentioned above, and when accepting the Plaintiffs' assertions as true, dismissal is inappropriate, and discovery should be allowed to proceed as to these matters.  Moreover, dismissal with prejudice would not be appropriate given the likelihood that a proper party could be named if Asset Plus is somehow indeed found to be an incorrect party.

### B. Asset Plus's Request for Dismissal of The Rescission Count Should Be Denied.

Asset Plus makes two arguments as to why the rescission count in the complaint should be dismissed.  First, Asset Plus alleges that the "purpose [of the contract] has neither been frustrated nor rendered impossible as Asset Plus continues to perform" and further contends that the Plaintiffs' complaint merely states that "access to common areas and amenities was available albeit under different circumstances." (Doc. 24, p. 6).  However, given that the "different circumstances" alleged in the complaint are that Asset Plus's facilities were intended for human occupation but have now become unsafe to use, Asset Plus's position that this does

6

not frustrate the purpose of the contract or render performance impossible is simply inexplicable. *See Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965) (holding that unsuitability of ice intended to be used in a packing process supported rescission under theories of frustration of purpose and impossibility of performance). In any event, the impossibility of performance and frustration of purpose issues present factual issues that are not amenable to a motion to dismiss.

Asset Plus's second contention, namely that the lack of existence of an adequate remedy at law has not been adequately pleaded, is similarly without merit. Paragraph 67 of the complaint states that "[t]his count for rescission is pleaded in the alternative to any claim for legal relief. To the extent no remedy at law is available, rescission is appropriate." (Doc. 19, p. 14). *See Carran v. Morgan*, 510 F. Supp. 2d 1053, 1061 (S.D. Fla. 2007) (holding that alternative pleading for rescission is proper at pleadings stage). It should also be noted that, quite unsurprisingly, Asset Plus's motion to dismiss contends that each and every one of the Plaintiff's legal claims for relief are without merit. Plaintiffs have plead the elements per *Bland v. Freightliner LLC*, 206 F.Supp.2d 1202, 1206 (M.D. Fla. 2002), the very case cited by Defendant. Thus, Asset Plus has, itself, demonstrated that the alternative pleading of the rescission claim was appropriate.

### C.     Asset Plus's Request for Dismissal of The Breach of Contract and Implied Warranty Claims Should Be Denied.

Asset Plus argues that the Plaintiffs have failed to allege a violation of an express term of the contract such that a breach could be established and have also failed to identify any express term to which a good faith and fair dealing argument could apply. These arguments fall short.

First, there are express terms of the contract that have been directly violated. As was noted in the paragraph 69 of the complaint,

> The Housing Contract provided that each Plaintiff "shall . . . have the right to use, in common with other residents of the community, swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, . . . meeting rooms and other areas of the Community intended for use by all residents of the Community[.]"

(Doc. 19, p. 14). As was further explained by paragraph 70, "[t]he Defendant [has] breached the contract because they are unable to safely provide these services and amenities." (Doc. 19, p. 14).

Asset Plus's response to this very straightforward claim of breach is to argue that "[n]othing in the lease obligates Asset Plus to provide any minimum number of common areas or amenities—only access to those common areas and amenities that do exist." (Doc. 24, p. 8). However, it is very interesting that Asset Plus argues that it is not required to provide access to any particular amenities in light of the fact

8

that its contract specifically provides a list of such amenities, namely "swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, . . . meeting rooms and other areas of the Community intended for use by all residents of the Community." (Doc. 19, p. 14). More importantly, the Plaintiffs have clearly alleged a lack of effective access to amenities that "do exist" but are otherwise unusable due to COVID-19. As such, a breach has been appropriately pleaded.

As to the implied covenant of good faith, the complaint is equally clear. The contract at issue here is one where, by its express terms, the Plaintiffs pay for the right to occupy communal, dorm-style housing with shared bedrooms, bathrooms, and common areas. Due to the physical structure of these housing arrangements, they are particularly and uniquely unsafe to occupy due to the COVID-19 pandemic, akin to a cruise ship on land. Notably, as is explained in the complaint, the universities themselves operated very similar housing and decided it was unsafe to occupy. There was only one way to make this housing safe, and that was for "a vast majority of the students [to] move out in order to practice safe social distancing in accordance with CDC recommendations." (Doc. 19, p. 15). It was thus inconsistent with the obligation of good faith and fair dealing for Asset Plus to assert that the Plaintiffs were getting the benefit of their bargain when a decision to remain would have been inconsistent with public health concerns and guidance.

Likewise, the complaint also makes it clear that it was unfair and inconsistent with the duty of good faith and fair dealing for Asset Plus to closely tie itself to the university campus and activities, but then later contend that the cessation of classes on campus was irrelevant. As noted in the complaint, "once the schools have closed and the students it purports to serve have been forced to leave, the reality reveals itself that Defendant does not consider its provision of room, board, and services to be tied whatsoever to the schools or to the students' academics, as it has failed to refund unearned payments for room, board, and fees." (Doc. 19, p. 15). Asset Plus's position is utterly inconsistent with the contract's description of Southgate as a "student residence environment" and also conflicts with the fact that the contract clearly provides for school related scheduling, such as meals being served only when school is in session. (Doc. 24-1, p. 48 & 55).

### D.   The Florida Consumer Collection Practices Act Claims Should Not Be Dismissed.

The Florida Consumer Collection Practices Act (FCCPA) "is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." *Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So.2d 196, 200-201 (Fla. 1976). The FCCPA "is to be construed in a manner that is protective of the consumer[,]" FCCPA § 559.552, and when determining whether harassing conduct violates the statute, courts do not use a reasonable person standard, but evaluate the conduct from the perspective of a

consumer whose circumstances makes him relatively more susceptible to harassment. *Jeter v. Credit Bureau Inc.* 760 F.2d 1168, 1180 (11th Cir. 1985).

The Florida Consumer Collection Practice Act in pertinent part states:

559.72 Prohibited practices generally. —In collecting consumer debt, no person shall:

> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family;

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist;

Asset Plus first claims it is entitled to dismissal of Plaintiff Corinti's claim because "there is no outstanding debt." (Doc. 24, p. 12). In other words, because Corinti happened to pay all the spring semester rent up front, Defendant contends it should be in the clear. However, neither the plain language of the FCCPA nor case law interpreting it requires that a debt be outstanding for the consumer protection provisions of the statute to apply. To the contrary, the FCCPA applies to *all debts*, whether due or not and defines "debt" as "any obligation or alleged obligation." *See* FCCPA § 559.55(1).

Under the FCCPA, Corinti created the requisite debt obligation when she signed the contract with the Defendant. (Doc. 19, ¶ 5). Asset Plus's interpretation

flies in the face of reason and would render §§ 559.72(7) & (9) meaningless. For example, under Defendant's view of the law, if a consumer is harassed, abused and threatened into paying a debt they don't owe, they would be barred from bringing a claim because there is "no outstanding debt." Notably, that is in fact what happened in this case as to the other Plaintiff, Santo, as discovery will confirm that Santo felt harassed and worried by Defendant's collection efforts and ultimately paid the rent for the month of April 2020. The fact that Corinti's debt is no longer outstanding does not preclude her FCCPA claim, and this argument should be rejected. Defendant is likewise incorrect when it claims there are no allegations that Asset Plus made any efforts to collect a debt from Corinti (Doc. 24, p. 13); in fact, Corinti alleges that Defendant "collected this money for services it did not and could not perform." (Doc. 19, ¶ 16). Corinti's claim is well-plead and should proceed.

Defendant's next arguments are directed towards Santo, and the purported insufficiency of her FCCPA allegations. Asset Plus asserts that Santo's "allegations in the Amended Complaint are nothing more than mere recitations … and conclusory allegations that Asset Plus 'is haranguing and harassing [Santo] and her daughter concerning a debt they do not owe.' Am. Compl. ¶ 22" (Doc. 24, p. 20) But Asset Plus omits the very next sentence in the Amended Complaint which asserts, "Defendant is attempting to collect rent for the month of April although Plaintiff and her daughter do not owe this debt." (Doc. 19, ¶ 23).

Plaintiffs' allegation of specific debt collection misconduct is directly supported by the evidence referred to and attached to the Amended Complaint, including the first debt collection correspondence Asset Plus sent to Plaintiffs and all the residents, attached to the Amended Complaint as Exhibit A. Plaintiffs specifically allege the following:

> Astonishingly, on March 31, 2020, Defendant sent an email to all its residents, feigning concern and stating "[o]ur hearts go out to those experiencing hardships as a result of COVID-19," but then goes on to compare this situation to Christmas vacation or "spring break" to support its position that they will not refund any money or let anyone out of their contract, and "does not anticipate doing so in the future, for any reason related to COVID 19." (Please see Exhibit A)
>
> Defendant states in the March 31, 2020 letter that its motivation for refusing to provide refunds or allow people out of their lease was motivated by its own financial gain including its need to pay "real estate taxes."

(Doc. 19, ¶¶ 38-39).

The subsequent timeline of correspondence confirms Defendant's debt collection conduct. Defendant sent Santo the March 31 letter the day before rent was due from all residents including Santo.[3] On April 6, 2020 at 3:03 p.m., Defendant sent Santo correspondence titled "FIRST LATE NOTICE" and the subject line "Delinquency Notice" which stated, "[a]ccording to our records, payment of your rental account has not been received. You are reminded that all rent is due on the

---

[3]  This is evidenced by the lease attached by the Defendant as their Exhibit A, which was not included in Plaintiffs' Amended Complaint. (Doc. 24-1)

13

day indicated in your lease for ea ch(sic) calendar month." (**See Exhibit 1**) Less than an hour later, at 3:59 p.m. on April 6, 2020, Defendant sent Santos another correspondence stating, "the April payment is now due." This email went on to state "[w]e understand that many of our families are experiencing hardships due to the outbreak of the COVID-19 virus … you must email me to set up a payment plan." (**See Exhibit 2**).[4] As these allegations and evidence demonstrate, Defendant's suggestion that no debt collection cause of action is alleged is simply incorrect.

Asset Plus's final argument is that "[n]either Corinti nor Santo alleges that Asset Plus knew or intended to collect on a debt that was illegitimate or without legal right." (Doc. 24, p. 14). This assertion is false, as Plaintiffs expressly allege both Defendant's knowledge as well as the illegitimacy of the debts. Specifically, Plaintiffs allege, "Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate, or to assert the existence of some legal right when Defendant knows that right does not exist." (Doc. 19, ¶ 93). Plaintiffs went into further detail concerning Defendant's actual

---

[4] Exhibit 1 and 2 were not attached to the Amended Complaint but are referenced in the complaint and specifically described as "Defendant is attempting to collect rent for the month of April although Plaintiff and her daughter do not owe this debt. (Doc. 24, ¶ 23) As pointed out in *Ali v. LH All. Inc.*, No. 19-CV-61387, 2019 WL 3997124, (S.D. Fla. Aug. 23, 2019), a case cited by Asset Plus in their Motion to Dismiss, a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, but documents may still be considered when they are central to Plaintiff's claims, citing, *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.")

knowledge of the debts' illegitimacy by identifying the proclamations from the President, Florida's Governor and CDC. (*Id.*, ¶¶ 25-27). Plaintiffs have sufficiently alleged Defendant's knowledge that the debts were illegitimate.

In sum, this case presents a classic violation of consumer law, albeit in a novel form presented by the COVID-19 pandemic. The FCCPA was designed, however, to address all manners of debt collection conduct, and Defendant presents no case law stating or even suggesting that when a landlord can no longer safely provide its services, it is nevertheless entitled to collect consumer debts. Moreover, whether a defendant violated the FCCPA is a jury question, inappropriate for a motion to dismiss. *See Ortega v. Collectors Training Inst. of Ill., Inc.*, No. 09-21744-CIV, 2011 WL 241948, at *9 (S.D. Fla. Jan. 24, 2011) ("Florida courts have placed the determination of elements comprising FCCPA violations within the jury's province.") (citing *Story v. J.M. Fields, Inc.*, 343 So. 2d 657, 677 (Fla. 1st DCA 1977) (holding it is the business of juries to determine the legitimacy of the creditor's claim, the plausibility of the debtor's excuse and all other circumstances that color the transactions). Plaintiffs have plead straightforward violations of §559.72(7) and/or §559.72(9), and the claims should proceed.

### E. Counts IV, V, VI Should Not Be Dismissed on The Grounds That the Plaintiffs "Continue to Enjoy the Benefits They Paid to Receive."

As noted in the introduction, Asset Plus's motion to dismiss fails to honor the standards for a motion to dismiss, most notably that "a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff." *Bilotta v. Citizens Info. Assocs., LLC*, No. 8:13-CV-2811-T-30TGW, 2014 WL 12620851, at *1 (M.D. Fla. Jan. 10, 2014). Asset Plus's assertion that "the Plaintiffs continue to enjoy the benefits they paid to receive" goes directly against allegations in the complaint that the facilities and amenities at Southgate are unusable because they are dangerous, and in certain instances, such as the cafeteria, were closed. Plaintiffs certainly are not enjoying the benefits, have properly pled that fact, and Asset Plus's spin on the facts has no relevance to a motion to dismiss.

Asset Plus also contends that Counts IV (money had and received) and VI (unjust enrichment) are redundant "because they require the same proof and seek the same relief." (Doc. 24, pp. 16-17). However, this allegation of redundancy does not require dismissal. *See Wichael v. Wal-Mart Stores, E., LP, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, *2 (M.D. Fla. Oct. 30, 2014)*("'[M]otions to dismiss made under Rule 12(b)(6) only test the validity of the claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid.'"). It is also

16

noteworthy that Asset Plus asserts the existence of a contract as a defense to Count VI's unjust enrichment claims but does not appear to allege the applicability of the same defense to Count IV's money had and received claim.  As such, not only will Asset Plus suffer no prejudice as a result of an allegedly duplicative claim, but this discrepancy suggests that these claims are not entirely redundant in the context of this case.

    **F.**    **The Lease Does Not Preclude the Plaintiffs' Unjust Enrichment Claims.**

Asset Plus contends that the existence of the "valid" lease precludes an unjust enrichment claim.  However, "[u]njust enrichment may . . . be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid." *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013).  Here, the Plaintiffs have raised a potential challenge to the validity of the lease by pleading in the alternative for rescission of the lease.  As such, the pleading of unjust enrichment to recover amounts paid for the time that the premises could not be used is proper.

    **G.**    **The Plaintiffs Conversion Claims Are Proper and Should Not Be Dismissed.**

In this case, there is cause to conclude that the obligation at issue here is more than "a simple debt which can be discharged by the payment of money." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).  Rather, "[f]or money to be the object of conversion 'there must be an obligation to keep intact or deliver

the specific money in question, so that money can be identified.'" *Id.* (*quoting Futch v. Head*, 511 So.2d 314, 320 (Fla. 1st DCA 1987). Such a requirement exists under the lease agreement at issue here, as the lease specifically permits a refund of prepaid amounts at any time during the lease through "reletting" and contemplates a separate "account" for each lessor for that purpose. Specifically, the lease contract provides that

> Under no circumstances will **prepaid funds or deposits on the tenant's account** be transferred to a relettor's account. Should the tenant wish to pay for any of their fees, they must do so by paying the relettor directly or submitting a payment to management in the relettor's name.

(Doc. 24-1, p. 76) (emphasis added). Because there is an identifiable and separate "account" under the contract attributable to each tenant, the conversion claim is appropriate for returnable amounts that have been paid.

## III.   CONCLUSION

Plaintiffs assert they have properly asserted the above causes of action, if the Court disagrees for any reason Plaintiffs ask for the opportunity to amend.

Respectfully submitted,

*/s/William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Amanda J. Allen, Esquire
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM

18

        4030 Henderson Blvd.
        Tampa, FL 33629
        Telephone: (813) 500-1500
        Facsimile:  813) 435-2369
        Billy@TheConsumerProtectionFirm.com
        Amanda@TheConsumerProtectionFirm.com

        John W. Barrett, Esq. *(pro hac vice)*
        Raymond S. Franks II *(pro hac vice)*
        BAILEY & GLASSER, LLP
        209 Capitol Street
        Charleston, WV 25301
        Telephone: (304) 345-6555
        Facsimile: (304) 342-1110
        JBarrett@baileyglasser.com
        rfranks@baileyglasser.com

        ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 26, 2020, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will automatically send electronic notification and a copy of such filing to the following counsel of record.

        Respectfully Submitted,

        */s/ William "Billy" Peerce Howard*
        William "Billy" Peerce Howard, Esquire